810 F.2d 195
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Anthony WILLIAMS, Defendant-Appellant.
 No. 86-5571.
 United States Court of Appeals, Fourth Circuit.
 Submitted Nov. 28, 1986.
Decided Jan. 21, 1987.
 
 Before PHILLIPS, CHAPMAN and WILKINSON, Circuit Judges.
 Alan B. Soschin, Alan B. Soschin, P.C., and G. Allen Dale, on brief, for appellant.
 Henry E. Hudson, United States Attorney, William G. Otis, Assistant United States Attorney, Ellyn Marcus Lindsay, Trial Attorney, United States Department of Justice, on brief, for appellee.
 PER CURIAM:
 
 
 1
 Michael Williams appeals the district court's denial of his motion to suppress twelve pounds of marijuana which were found during a search of his luggage at Washington National Airport. Williams pled guilty to possession of marijuana with intent to distribute, reserving the right to appeal the denial of his suppression motion. He claims here that he was seized without justification in violation of the Fourth Amendment. Alternatively, he urges that the marijuana should be suppressed because the agents searched his bag without his consent. We affirm the district court's order denying the motion to suppress.
 
 
 2
 Williams arrived at Washington National Airport on February 4, 1986, on a flight from West Palm Beach, Florida. He was observed as he disembarked by Drug Enforcement Administration ("DEA") Special Agents Mark Averi and Michael DeSanctis. Williams went immediately to a bank of phones near the baggage claim area, where he attempted to make a call, but apparently was unable to complete it. Williams then collected his baggage, which consisted of one suit bag, and walked quickly out of the terminal. The two agents approached Williams at the curb outside the terminal, identified themselves and showed their credentials. They asked if they could speak with Williams. He answered, "Yes." Both agents were dressed in suits and ties; neither displayed a weapon.
 
 
 3
 Agent Averi asked Williams if he had just arrived from West Palm Beach and Williams replied that he had. Agent DeSanctis asked Williams if he would mind stepping back to the curb so as to be out of the rain and Williams did so. When Agent Averi asked to see Williams' ticket, he was shown a one-way ticket which had been paid for in cash. Agent DeSanctis then asked if Williams had a driver's permit or other identification. Williams looked through his pockets and told DeSanctis that he had left it at home. Agent Averi asked Williams if he would allow a search of himself and his bag. Williams nodded and gestured in a way which the agents understood to mean yes. Because it was cold and raining, Agent Averi asked Williams if he would mind stepping inside the terminal. Averi gave Williams back his ticket and Williams picked up his bag and went inside with the agents. They were then in the hall leading to the terminal's main entrance. This was a public place, where people were entering and leaving.
 
 
 4
 As they went inside, Agent Averi told Williams that he represented the DEA and that his job was to interdict narcotics coming into the Washington, D.C., area. Williams responded to the effect that he understood and had no problem with that.
 
 
 5
 Inside, Agent Averi once again asked Williams for permission to search Williams' bag and Williams told him to "go ahead." He gave Agent Averi the key to the bag. Agent DeSanctis requested permission to search Williams and asked whether he was carrying any narcotics. Williams gave his permission for the search and said that he was not carrying any narcotics. As DeSanctis completed a pat-down of Williams, he saw Williams looking at Agent Averi, who had his hand on a plastic bag inside the suit bag. A strong odor of marijuana emanated from the bag, which was wrapped and taped in a manner familiar to the agents as a method of transporting marijuana. The bag also contained several strips of perfume-doused tissue, which from the agents' experience they knew were often used to mask the odor of marijuana.
 
 
 6
 At this point, Williams ran out the door. Agent DeSanctis grabbed his coat, but Williams got out of the coat and kept going. Agent DeSanctis attempted to tackle Williams, but slipped on the wet pavement. After both agents gave chase, they apprehended Williams, subdued him and placed him under arrest.
 
 
 7
 Williams moved to suppress the marijuana, arguing that he had been seized in violation of the Fourth Amendment when the agents initially approached him and, alternatively, that he had not consented to the search of his bag and that in either case the evidence was the fruit of an illegal search. The district court denied the motion, finding that no seizure had occurred and that Williams had consented to the search.
 
 
 8
 A district court's determination that a seizure has or has not occurred is essentially factual and will be upheld unless it is clearly erroneous. United States v. Gooding, 695 F.2d 78, 82 (4th Cir.1982). The district court here found that the encounter was "a Mendenhall encounter." In United States v. Mendenhall, 446 U.S. 544, 553-54 (1980), the Supreme Court decided that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. In the absence of such force or a show of authority which would cause a reasonable person to believe that his freedom of movement had been curtailed, no seizure occurs. Therefore, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, or by putting questions to him. Florida v. Royer, 460 U.S. 491, 497 (1983). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. Id. A person approached in this way may legally disregard the questions put to him and walk away. Mendenhall, 446 U.S. at 554.
 
 
 9
 The inquiry in this case, as in Mendenhall and Royer, is whether the agents did or said anything, before their discovery of the marijuana, which would, objectively viewed, have caused Williams to believe he was not free to leave if he chose. We find that the agents did not engage in any of the conduct which the Supreme Court in Mendenhall identified as likely to give this impression and thus create a seizure. The agents did not behave in a threatening manner, did not display weapons or touch Williams without permission prior to the discovery of the marijuana, and did not ask him to leave the public area of the terminal or indicate in any way that he might be forced to comply with their request to speak with him. They asked and he acquiesced. Williams claims that he was coerced because he is Jamaican and therefore had a greater fear of police than an American would have had. However, the Mendenhall test is an objective one--whether a reasonable person would have felt free to leave. Mendenhall, 446 U.S. at 554-55; Royer 460 U.S. at 502. The fact that Williams was not expressly told that he had the right to leave is not significant. Mendenhall, 446 U.S. at 555. Williams further argues that there was a detention because English is his second language; he implies that he may not have understood what was happening and felt more compulsion than another person. Williams' testimony at the suppression hearing, however, shows him to be fluent in English.
 
 
 10
 Williams' last argument, that a seizure arose from the agent's statement that his job was to "interdict" narcotics, meaning "to restrain authoritatively," has no merit. A reasonable person would not have understood the statement to mean that he was necessarily being restrained at that moment. In addition, Williams testified that he did not know what "interdict" meant, and so could not have been cowed by it.
 
 
 11
 In these circumstances, the district court's determination that no seizure occurred was correct.
 
 
 12
 Williams' second contention, that the marijuana should be suppressed because he did not consent to the search of his bag, also fails. Williams' sole argument here is that he was not informed of his right to withhold his consent. Although the government has the burden of showing that Williams' consent was in fact voluntary, the voluntariness or lack thereof is determined from the totality of all the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). The agents were not constitutionally required to inform Williams of his right to refuse, nor was the government at the suppression hearing required to prove that Williams knew of his right to refuse. Id. at 231-33. The non-coercive circumstances of Williams' meeting with the agents described above amply support the district court's finding that Williams consented freely to the search of the bag.
 
 
 13
 We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. We affirm the district court's order denying Williams' motion to suppress the evidence seized, and we affirm his conviction.
 
 
 14
 AFFIRMED.